## UNITED STATES DISTICT COURT
## WESTERN DISTRICT OF MICHGIAN

ROBERT BAKER,

      Plaintiff,


v.                                                    Hon.

RANDEE REWERTS, UNKNOWN           No.1:24-cv-0084
DEPUE, UNKNOWN KECK,
UNKNOWN SCHAFER,
UNKNOWN SCHMIDT, all in their
individual capacities.

      Defendants.

_____/
Paul Matouka (P84874)
Alyson Oliver (P55020)
Oliver Bell Group
Attorneys for Plaintiff
50. W. Big Beaver Road, Suite 200
Troy, MI 48084
(248) 327-6556
notifications@oliverlawgroup.com
_____/

## **COMPLAINT**

    NOW COMES PLAINTIFF, ROBERT BAKER, by and through his counsel

OLIVER LAW GROUP PC, and in support of his Complaint states as follows:

## **Parties**

1. Robert Baker (hereinafter "Mr. Baker" or "Plaintiff") is an adult who was
   incarcerated in the Carson City Correctional Facility ("DRF"), County of
   Montcalm, State of Michigan.

2. Defendant Randee Rewerts was, at all times relevant to the allegations in this complaint, the warden of DRF. Upon information and belief, Defendant Rewerts is a resident of Carson City, County of Montcalm, State of Michigan.

3. Defendant Unknown Depue was, at all times relevant to the allegations in this complaint, a corrections officer employed at DRF.

4. Defendant Uknown Keck was, at all times relevant to the allegations in this complaint, a corrections officer employed at DRF.

5. Defendant Unknown Schafer was, at all times relevant to the allegations in this complaint, a prison counselor employed at DRF.

6. Defendant Lieutenant Unknown Schmidt was, at all times relevant to the allegations in this complaint, a lieutenant employed at DRF.

## Jurisdiction and Venue

7. No Defendant is sued in their official capacity for monetary relief and therefore, the Eleventh Amendment does not present a bar to this Court's jurisdiction.

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under 42 U.S.C. § 1983, the First Amendment to the United States Constitution, the Eighth Amendment to the United States Constitution, and the Fourteenth Amendment to the United States Constitution.

9.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the majority of the events relevant to this Complaint occurred at DRF which is situated in the Western District of Michigan.

### Factual Allegations

10. Throughout his life Mr. Baker has developed weakness in his lower back and though he is capable of walking short distances unaided he required a wheelchair to safely move around.

11. Due to the sizes of Mr. Baker's wheelchair and cell, he was unable to store or enter his wheelchair in his cell.

12. This necessarily resulted in Mr. Baker's wheelchair being stored outside of his cell.

13. As a result, Mr. Baker's wheelchair was often appropriated by DRF staff for other purposes.

14. Most times, DRF staff would not return Mr. Baker's wheelchair to him until he was able to raise the issue to their attention.

15. This required Mr. Baker to send another inmate, if one was available, or walk to the officer's station despite the risk of falling and injuring himself.

16. On numerous occasions Mr. Baker raised the issue of his wheelchair being taken and not returned with DRF staff.

17. Specifically, Mr. Baker raised the issue in person with Defendants Schafer, Depue, and Keck on numerous occasions while they worked in his housing unit.

18. Mr. Baker also sent letters to Defendant Rewarts explicitly identifying the problem of his wheelchair being taken and not returned.

19. Mr. Baker asked Defendant Rewarts to ensure that each housing unit had a spare emergency wheelchair for unforeseen circumstances so that staff would not take his.

20. Despite Mr. Baker's pleas and warnings, Defendants did nothing to ensure that he had access to his wheelchair as needed and continued to take, and fail to return, his wheelchair.

21. On February 2, 2022, Mr. Baker found his wheelchair missing and learned that it had been used to take another inmate to healthcare.

22. Mr. Baker proceeded to the officers' station to speak with Defendants Depue and Keck regarding the issue.

23. Defendants Depue and Keck bluntly stated that this was not their problem and directed Mr. Baker to return to his cell.

24. On the return trip down the stairs from the officers' station Mr. Baker fell forward onto his left shoulder.

25. Though multiple other prisoners issued repeated calls for assistances, Defendants Depue and Keck made no move to assist.

26. When other incarcerated persons approached to assist Mr. Baker, Defendant Depue stated "Let him lay there, he's just mad because his wheelchair was took."

27. Defendant Schafer arrived at the officers station around the time that Plaintiff was being helped to his feet and stated "[j]ust let him fucking lay there."

28. This was witnessed by several other prisoners including Fred Proctor, Roy, Seger, Donald Marshall, and Mark Abratis. **Exhibit 1, Declarations of Witnesses**.

29. Other inmates assisted Mr. Baker, who was in a substantial amount of pain in returning to his cell then to the medline where contact with the prison clinic was attempted.

30. When the nurse on duty attempted to contact the unit officers to confirm the need for treatment, Defendant Depue insisted that Plaintiff had fabricated the entire incident.

31. As a result, Mr. Baker experienced increasing weakness in his lower extremities until it reached a point where he lost all function in his legs and bladder incontinence.

32. A thoracic spine MRI showed acquired spinal canal stenosis at T10/T11 with anterior and posterior cord compression.

33. Mr. Baker's medical providers subsequently confirmed that the injuries to Mr. Baker's spine were a result of his fall on February 2, 2022.

34. Plaintiff filed Grievance DRF-22-02-0341-17A against Defendants Depue, Keck, and Schafer alleging deliberate indifference.

35. By March 7, 2022, Mr. Baker's declining condition reached a critical point and he was in severe pain and unable to feel or move his legs.

36. At around 8 A.M. that day, Mr. Baker's wheelchair assistant went to Defendant Depue and informed him that Mr. Baker was in severe pain, could not feel or move his legs, and needed medical assistance.

37. Defendant Depue chose not to follow up with Mr. Baker for over an hour despite being informed of the critical situation.

38. Finally, at around 9 A.M. Defendant Depue went to Mr. Baker's cell and subsequently called healthcare.

39. Mr. Baker was then transferred to Sparrow Hospital.

40. In the weeks following Mr. Baker's fall, he filed numerous grievances regarding the conduct of Defendants and others for deliberate indifference.

41. On September 20, 2022, Mr. Baker wrote a letter alleging that Officers Bussell and Bartrum were conspiring against him.

42. On September 30, 2022, Mr. Baker alleges he was sanctioned for using the dayroom phone.

43. All such grievances and complaints were dismissed after what MDOC termed as adequate investigation.

44. On January 20, 2023, Mr. Baker was scheduled to be interviewed by a re-entry agent. After the interview Mr. Baker was told to wait in what is known as the middle day room.

45. Once alone in the room, Defendant Schmidt stated that he had heard Plaintiff was making trouble for his officers by filing grievances and threatened to transfer him to the 500 Unit, which was a level 4 housing unit and would have resulted in Mr. Baker losing significant privileges and freedom he was otherwise entitled to.

46. Mr. Baker's custody level was level 1 and he had not been reclassified.

47. Upon information and belief, level 4 offenders are generally understood to present greater risks of violence, escape, or other improper conduct.

48. During the conversation, Defendant Schmidt admitted that he was not privy to the contents of Mr. Baker's grievances but indicated that he understood at least some of them to concern the broken elevator that was being repaired.

49. The message from Defendant Schmidt was clear, stop filing grievances or your life will get much worse.

50. Defendant Schmidt's threat worked, and Mr. Baker stopped filing grievances.

51. In August of 2023, Mr. Baker was paroled to a medically assisted living facility.

52. Mr. Baker would not have had to live at the medically assisted living facility but for the injuries he suffered on February 2, 2022.

53. Mr. Baker is currently paying approximately $6,000 per month to live at the assisted living facility.

## Count I – 42 U.S.C. § 1983 – Eighth Amendment Deliberate Indifference to Serious Medical Needs

54. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

55. The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment.

56. The Supreme Court has interpreted this as prohibiting deliberate indifference to serious medical needs. See *Farmer v. Brennan*, 511 U.S. 825 (1994).

57. In this case, Defendants Rewarts, Schafer, Depue, and Keck were deliberately indifferent to Mr. Baker's serious medical needs.

58. All Defendants were aware of Mr. Baker's medical conditions and his need for a wheelchair.

59. All Defendants were aware that Mr. Baker's wheelchair was often not returned after being taken to medical.

60. Moreover, Defendants Depue, Keck, and Schafer refused to provide Mr. Baker with assistance after he fell on February 2, 2022, and instructed others not to do so.

61. Defendant Depue also told the nurse from medical that Mr. Baker fabricated the entire incident and did not need medical attention.

62. Defendant Rewarts was deliberately indifferent by refusing to address Mr. Baker's written concerns about his wheelchair being taken and not returned.

63. Defendants Depue, Keck, and Schafer were all deliberately indifferent by failing to:

   a. Ensure that there was an emergency wheelchair in the unit to avoid taking Mr. Baker's;

   b. Ensure that Mr. Baker's wheelchair was returned in the event that it was otherwise appropriated;

   c. Failing to provide Mr. Baker with assistance on February 2, 2022, after he fell; and

   d. Instructing others not to assist Mr. Baker after he fell on February 2, 2022.

64. Defendant Depue was also deliberately indifferent by attempting to prevent Mr. Baker from receiving medical attention by informing medical staff that he fabricated the entire incident and did not need treatment.

65. As a result of Defendants deliberate indifference, Mr. Baker suffered severe – and potentially permanent – injuries to his back and legs.

66. The injuries involved significant amounts of pain and further limited Mr. Baker's independence, causing him emotional damages in the form of depression, anxiety, and frustration.

## Count I – 42 U.S.C. § 1983 – First Amendment Retaliation

67. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

68. The First Amendment to the United States Constitution prohibits retaliation against persons, including incarcerated persons, for protected speech including the filing of grievances.

69. Defendant Schmidt threatened to send Mr. Baker to a level 4 housing unit as an express response to Mr. Baker's grievances.

70. Defendant Schmidt did not know the contents of Mr. Baker's grievances except that they involved his housing unit and staff.

71. Defendant Schmidt was aware that Mr. Baker was not a level 4 offender.

72. Level 4 housing is a higher security level than Mr. Baker was designated for.

73. Defendant Schmidt threatened to transfer Mr. Baker to level 4 housing if he continued to file grievances.

74. This transfer would have resulted in a significant reduction in Mr. Baker's freedoms, ability to possess property, ability to spend time outside of his cell, and other benefits Mr. Baker was entitled to in level 1 housing.

WHEREFORE, Plaintiff Robert Baker respectfully requests that this Court adjudge and declare that Defendants violated his Eighth Amendment rights for the reasons set forth above and award him:

a. Nominal, compensatory and exemplary damages;

b. Economic and non-economic damages;

c. Punitive damages;

d. Reasonable attorneys' fee pursuant to 42 U.S.C § 1988

e. Any other relief this Court deems just and proper.

<u>Jury Demand</u>

Plaintiff Requests a trial by jury.

Respectfully Submitted,

<u>/s/ Paul Matouka</u>
Oliver Bell Group
Paul Matouka (P84874)
Attorney for Plaintiff
50 W. Big Beaver Rd., Ste. 200
Troy, MI 48084
T: (248) 327-6556
E: notifications@oliverlawgroup.com

Date: January 29, 2024

Exhibit 1

STATE OF MICHIGAN )
       ) ss: <u>AFFIDAVIT OF FRED C. PROCTOR #178602</u>
COUNTY OF MONTCALM)

  I FRED C. PROCTOR #178602, pursuant to 28 U.S.C. § 1746, declare under the penalty of perjury that the following is true and correct:

1. That I am an incarcerated individual confined within the Michigan Department of Corrections, currently housed at the Carson City Correctional Facility (DRF) (800 Unit), located at 10274 E. Boyer Road, Carson City, Michigan 48811-9746.

2. That in April of 2021, I was classified as a "Wheelchair Attentant" -HA-8-017 (720). I became Robert C. Baker's, #274862 wheelchair attendant. I was always standing right behind or beside Robert at all times described below.

3. That as Mr. Baker's wheelchair attendant, I am aware of the fact, that from April 2021 to February 2, 2022 that 800 Unit Corrections Officers targeted Mr. Baker's wheelchair and took it whenever needed for a general use or an emergency. The wheelchair was rarely brought back and I would have to go retrieve it from the Level Four housing units, another Level Two housing unit, Health Care or the Control Center. This caused Robert to be late for med-line, miss med-line, or some other callout, and in many cases miss and go without chow.

4. That on or about February 2, 2022 at approximately 08:00 hrs, med-line was called I left my cell 800-26-B and went to Robert C. Baker's cell (800-118-B) to push him to med-line to get his medications. I asked Robert if he was ready to go, and he said his wheelchair is missing. I went up to the officers station and spoke to Officer Depue about Robert's wheelchair being missing. Depue told me to look in the back room and see if it was there. I looked and it was not there. He told me to take another chair if there was one in the back room, there wasn't any wheelchairs in the back room at all.

5. That after looking for Robert's wheelchair, Officer Keck told me that Mr. Baker's wheelchair was taken on third shift to take prisoner Reddick to health care. I went back down to Robert's cell (800-118-B) and told him his wheelchair was taken on third shift to take Reddick to healthcare.

6. That Robert and I walked up to the officers station. Robert attempted to verbally address his grievance to Officer Depue and Keck, he asked them why 800 Unit staff were constantly taking his wheelchair and asked why 800 Unit did not have an emergency use only wheelchair for emergencies. Officer Depue could not give Robert an answer. Robert then asked Depue how he was suppose to get to med-line to get his medications. Officer Depue responded to Robert: "That's not my problem," "that is between you and health care." Robert told Officer Depue, he could not walk the distance to med-line because his legs give out and he falls, and it was getting worse over the past few weeks. Officer Depue stated: "I don't know what to tell you." Robert then asked Officer Depue to call a Sargent or shift supervisor Officer Depue responded: "It's not a supervision problem." Officer Depue refused to call a Sargent or supervisor. Robert again asked Officer Depue how he was suppose to get to med-line, and Officer Depue responded: "That's not my problem, I have more important things to worry about," and told Robert to go back to his room.

7. That after more than three (3) decades of dealing with corrections officers, it

is my opinion, Officer Depue appeared to be very cocky, unprofessional and attempting to provoke and draw Mr Baker into a confrontational conflict. A tactic many corrections officers use to write prisoners misconducts in retaliation for addressing grievances. (Mr. Baker, a hearing impaired, handicapped incarcerated individual became a target of officer Depue, Keck, Edlinger, PC Michael J. Schafer and other DRF staff's retaliatory schemes after he verbally addressed his grievances about his wheelchair).

8. That after Officer Depue told Robert to go back to his room, I went back to my cell to grab Robert a few food items and coffee, so he something to eat and drink until his wheelchair was located and immediately proceeded back to Mr. Baker's cell (800-118-B).

9. That as I was going down 800 Unit's B-Wing lower stairs, I noticed Robert laying on the floor and several prisoner (Echo's, Seger, Stone, and another prisoner I did not know) yelling up to the officer station to get Depue's, and Keck's attention to provide Robert with assistance. I heard Officer Depue respond to the said prisoners request for assistance: "He's faking it, just let him lay there, he's just mad because his wheelchair was took." Then I heard Prisoner Counselor (PC) Michael J. Schafer yell back, "Just let him fucking lay there." I took the coffee and food to Robert's cell and quickly returned to Robert. I noticed that neither Officer Depue, Keck, nor PC Schafer were assisting Mr. Baker and never came down the stairs to make a determination if he needed medical assistance. At the same time, I noticed prisoner Echo's and the prisoner laundry man Donny Marshall were helping Robert to his feet. I walked up to Robert and asked him if he needed help back to his cell. Robert looked very disoriented and in a lot pain. Prisoner Marshall and I helped Robert back to his cell, I helped him into his bed.

10. That about 20 minutes or so later, Robert's wheelchair was located in health care. Officer Keck sent me to retrieve it. I went and got the wheelchair and returned to Robert's cell and helped him get into the wheelchair. He was in a lot of pain and had tears in his eyes, and having difficulties moving. I took him to med-line.

11. While at med-line, Robert spoke to LPN Ichorn and explained to her his fall, how his legs gave out and he fell hurting his back and hip. LPN Ichorn called the clinic, and she told Robert that the clinic nurse told her to tell Robert he needed to have his unit officer call the clinic, that she was too busy to see him, and was the only nurse in the clinic. Robert told LPN Ichorn that the unit officers refused to call. LPN Ichorn told Robert she would call the unit and tell the officers that they need to call the clinic for him. We left and I pushed Robert back to the unit.

12. That Robert and I entered 800 Unit and went directly to the elevator. While waiting on the elevator the officers station phone rang. Officer Keck answered the phone, and I personally heard Officer Keck state to the caller, (Whom I believe to be LPN Ichorn), "Baker is just fabricating the whole ordeal,"

13. That after Robert's fall and injury, he at each med-line call-out attempted to obtain medical assistance for his fall, and each time the nurse attending the med-line stated they would call the clinic for him when they got time, or to have his Unit officers call the clinic for him. Never, did he get called to the clinic, after med-line. It appeared to me that Officer Keck's statement "Baker is just fabricating the whole ordeal," poisoned the minds of all medical staff and they then refused to adequately treat Mr. Baker. It is my belief Officer Keck intentionally poisoned

health care staff's minds to retaliate against Robert for addressing his grievances
about his wheelchair and to cover-up for his, Officer Depue's and PC Schafer's
failure to respond to Robert's fall on the stairs.

14. At no time did Sgt. Fidler, Lt. Burns or any other MDOC staff member interview
me, during any grievance or other investigation in this above described matter.

15. That on or about February 5, 2022, at approximately morning med-line was called
and I went to get Robert, helped put his shoes on because his feet were swollen, and
helped him get into his wheelchair because he was having difficulties moving around
and still in alot of pain from his fall on February 2, 2022. I pushed him to the
elevator and while waiting on the elevator, Robert had an urgent need to urinate. I
pushed him over to the bathroom urinal and told him to have the officers call me
when he was ready to go. I went back to my room and about 15 minutes later Officer
Keck called me to push Robert to med-line. I never heard Officer Keck or any other
officer in 800 Unit announce last call med-line over the PA system. When we got to
med-line the line of prisoners waiting on their medications was still very long,
with 800 Unit prisoners still in the line. We were not late at all. When we returned
from med-line Officer Edlinger was standing at the officer station and stopped us.
He told Mr. Baker that he had a ticket (misconduct) for him written by Officer Keck.
Officer Edlinger proceeded to review and read the misconduct to Mr. Baker, and Mr.
Baker asked Officer Edlinger to speak up because he could not hear him. Officer
Edlinger then became very frustrated and stopped reading the misconduct. Officer
Edlinger then handed Mr. Baker an non-legible copy of the misconduct report. Mr.
Baker then asked Officer Edlinger for a legible copy that he could not read and
Edlinger told Mr. Baker: "No that's all your getting." Mr. Baker attempted to
explain to Edlinger that he could read the non-legible copy, and Edlinger told Mr
Baker again: "That's all your getting." I than pushed Mr Baker back to his cell,
and helped him get out of his wheelchair and into his bed. (This misconduct written
by Officer Keck and Edlinger's attitude in my opinion was in retaliation for Mr.
Baker's writing grievances against Officers Keck, Depue, and PC Schafer's failure to
respond to his fall).

16. That on or about February 9, 2022 at approximately 09:10 am, PC Michael J.
Schafer called Mr. Baker to the officers station. I went to Mr. Baker's cell helped
him into his wheelchair and pushed him to the elevator and then to the officers
station, where Officers Depue, Edlinger, and two non-regular officers where sitting.
PC Schafer then proceeded to conduct a class III misconduct hearing in this very
prejudicial setting at the officers station. Before Mr. Baker could explain his
defense to the misconduct report written by Officer Keck on February 5, 2022, began
yelling at Mr. Baker in a manner to humiliate, degrade and demean Mr. Baker in front
of the officers sitting at the officers station and prisoners in the lobby area. PC
Schafer was being very unprofessional and his demeanor and actions he was directing
at Mr. Baker was very aggressive, disrespectful, deliberate and intentional, making
statements like: "Were going to treat Baker like a little baby, so go down and get
each time like a child", to Officers Depue and Edlinger. He never gave Mr. Baker a
chance to defend himself in this hearing, PC Michael J. Schafer conducted this
hearing in a very unprofessional retaliatory manner.

17. That on or about March 7, 2022, at approximately 08:00 hrs, medlines were
called  I went to get Mr. Baker to push him to medlines. When I arrived at Mr.
Baker's cell, he looked very uncomfortable and in extreme pain, having tears in his
eyes. I ask him if he was ok to go to medline, he told me no, he was in a lot of
pain and could not move his legs. He asked me to go get Officer Depue or Keck to

call health care for him, because he was afraid of further retaliation from Depue. I left Mr. Baker's cell and went directly to the officer station and spoke to Officer Depue. I personally told Officer Depue, that Mr. Baker needed immediate medical assistance, that he was in extreme pain and could not move his legs, that his legs were all swollen up and that this was urgent and no bullshit. Officer Depue told me that he would go down to see Mr. Baker, as soon as Officer Keck got back from making a round. I went and told Mr. Baker what Officer Depue had told me. I then went up to the day room to watch and see if Depue would render Mr. Baker assistance. Officer Depue never went to see if Mr. Baker was ok or needed medical attention. In fact, when Officer Keck returned from making his unit rounds, Officer Depue never informed Officer Keck of what was going on with Mr. Baker and instead went directly into the A-wing Prisoner Counselor's office and got on the computer, totally disregarding Mr. Baker's need for medical assistance.

That at approximately 0905 am Officer Keck called Mr. Baker over the PA system for medline. At approximately 0906 hrs Mr. Baker's cell mate Rodolfo Amador-Castro, #962179, met Officer Keck at the top of the B-wing lower steps and told Officer Keck what was going on with Mr. Baker. Officer Keck then went down and spoke with Mr. Baker and made a determination to call health care for Mr. Baker. At approximately 0932 hrs, health care came to assess Mr. Baker's condition and took him out on a gurney to health care.

18. That as health care was attending to Mr. Baker, PC Michael J. Schafer was standing at the officer station, I overheard PC Schafer state to Officer Depue: "Baker's down faking he can't move his legs, what a faker." As health care was removing Mr. Baker out of the unit through the north enterance I overheard PC Schafer state to Officer Depue, "First he fakes a fall, files grievances against us, now he's faking he's paralyzed, I got something for his ass when he gets back."

19. That on or about March 7, 2022, a few hours after Mr. Baker was taken to health care on the gurney, I was called over the PA system. I reported to the 800 unit officer station and told to go pick-up Baker from health care. When arrived at healthcare, and entered the emergency room clinic, Mr. Baker, was lying on the gurney. Mr. Baker stated to me: "They think I am faking it and only want to give me diapers." A nurse was standing there and I said: "We'll have to address this in a grievance and in the courts if need be." The nurse asked me if I could help Baker get his shoes on and into his wheelchair, I tried to put his shoes on and told the nurse his feet are to swollen and his shoes won't go on. She asked me to help Baker get into his wheelchair and I told the nurse: "I don't feel comfortable moving him with a back injury. I don't think this is the proper way to handle this situation." An officer came in and told me to grab one side of Baker and he'll grab the side and at the same time left him into his chair. I did as the officer told me too, even though I felt very uncomfortable at that time. I then addressed Mr. Baker's wheelchair condition and told the nurse we have been trying to get a leg for this chair for several weeks now with no response from healthcare. I showed this nurse how Mr. Baker's leg keeps falling off the one leg we had on the wheelchair and hitting the ground causing his left foot and leg to go under the wheelchair and almost flipping him out of the chair as it had one time before. At first she said, they don't have any wheelchair parts, then I said: "Well we will have to file a grievance on that issue as well." Then the nurse said: "Let me go in the back room and see what we have." She came back with a very wide wheelchair, and I told her that the wide chairs don't fit through the unit doorways, and he'd have to stand up and let me fold the chair up before it would fit through the doorway, and Mr. Baker can not stand up. She went back to the back room and found a left leg for the

wheelchair, we left healthcare, and I pushed Mr. Baker to his cell in 800 unit and
helped him into his bed.

20. That on or about March 7, 2022, later in the evening after I had pushed Mr.
Baker back from healthcare and helped into his bed, Officer Keck called me over the
800 unit PA system. I reported to Officer Keck who asked me if I would go down and
help Mr. Baker get dressed because they were taking him to the hospital. When I went
down to Mr. Baker's cell, medical staff were standing outside Mr. Baker's cell and
asked me to help Mr. Baker get dressed, I helped Mr. Baker get dressed and told the
medical staff that his shoes would not go on because his feet and legs were badly
swollen. Mr. Baker was taken on a gurney, and I never saw him again until on or
about June 15, 2022 when he returned from the hospital.

21. That from February 2, 2022, after Mr. Baker's fall on 800 unit's B-Wing lower
steps until March 7, 2022, the day Mr. Baker was transported and admitted to an off
site medical facility, his health deteriorated more and more each day. Mr. Baker's
cell mate Amador-Castro  and I would have to help Mr. Baker get dressed, help him
into his wheelchair or bed, take him to the bathroom, ect. His bowel movements
became erratic, uncontrollable and unpredictable and many times he would defecate
and/or urinate in his bed, on himself, ect. Mr. Baker's cell mate Amador-Castro and
I would have to help him clean himself up. He was in constant, unbearable pain, and
his legs and feet would be so swollen, I could not get his shoes on. 800 unit staff
and  healthcare  seemed  to  ignore  his  urgent  pleas  for  medical  assistance,
intentionally and deliberately. It was very hard for me to watch him go through all
this unnecessary pain and discomfort, knowing that staff could have helped him at
anytime but simply ignored his pleas for medical assistance. This made me become
very  emotional  and  angry  to  see  my  friend  suffer  so  much,  and  be  treated  so
inhumanely.

22  That at no time did any MDOC staff member interview me during or after the
events described above, or any grievance filed on the the events described above or
any other MDOC investigation in the above described events.

I FRED C. PROCTOR #178602, pursuant to 28 U S C § 1746, declare under the
penalty of perjury that the forgoing is true and correct to the best of my
information, belief and personal knowledge.

Dated: 6/30/22

Fred C. Proctor #178602
Carson City Correctional Facility
10274 E. Boyer Road
Carson City, Michigan 48811-9746

Robert Villin 759458  6-30-22
Witness                     Date

Eric Hernon, 861290  6-30-22
Witness                     Date

Page 5 of 5

STATE OF MICHIGAN )
                      ) ss:    <u>AFFIDAVIT OF ROY SEGER #406860</u>
COUNTY OF MONTCALM)

    I ROY SEGER, #406860 pursuant to 28 U.S.C. § 1746, declare under the penalty of perjury that the following is true and correct:

1. That on or about February 2, 2022, I was housed at the Carson City Correctional Facility, located in Carson City, Michigan.

2. That on February 2, 2022 I was housed in 800 Unit on B-lower-wing.

3. That on or about February 2, 2022 at approximately 08:16 hrs, I was walking to the front of 800 Unit, on B-lower. At that time I personally observed Robert Baker, #274862 coming down the B-lower stairs. On the last two steps Mr. Baker fell forward to the floor and his head hit the concrete floor. Mr. Baker seemed to be unconscious.

4. That myself and a few other individuals yelled out to the officers at the officers station (Depue and Keck) informing them that Mr. Baker had fallen and hit his head on the floor. Officer Depue responded: "He isn't suppose to be using the stairs anyway," He's just mad because his wheelchair was took, just let him lay there " I yelled back to Depue: "That is irrelevant! He needs help! He fell down and hit his head on the floor!"

5. That within seconds, Prisoner Counselor (PC) Michael J. Schafer came out of his office and yelled: "He's faking, just let him fucking lay there "

6. That after these above said staff members refused to respond to our calls for help for Mr. Baker, a few other individuals helped Mr. Baker to his feet and he was taken back to his cell (8-118-B).

7. That at no time during first shift on February 2, 2022, did Officers Depue, Keck, or PC Schafer or any other MDOC staff member ever respond to or assist Mr. Baker after his fall on the stairs. Nor, did Officers Depue, Keck, or PC Schafer or any other MDOC staff member ever check on Mr. Baker during first shift after Mr. Baker's fall. Nor, did any MDOC staff member interview me during any grievance investigation or other investigation in regards to Mr Baker's fall and injuries.

I Roy Seger, #406860, pursuant to 28 U.S.C. § 1746, declare under the penalty of perjury that the forgoing is true and correct.

Dated: 8-25-22

_____
ROY SEGER, #406860
Affiant
Carson City Correctional Facility
10274 E. Boyer Road
Carson City, Michigan 48811-9746

Joseph Stacey 8-25-2022
Witness                Date

Beaushon L. 8-25-22
Witness                Date

STATE OF MICHIGAN )
               ) SS:  <u>AFFIDAVIT OF MARK ABRAITIS #576077</u>
COUNTY OF MONTCALM)

       I MARK ABRAITIS, pursuant to 28 U.S.C. 1746, declare under the penalty of perjury that the following is true and correct:

1. That on or about February 2, 2022, at approximately 08:16 hours, I was in the 800 Unit lobby area, I personally observed Mr. Robert Baker #274862 laying on the floor at the bottom of the 800 Unit Lower-B Wing stair case in an apparent distress.

2. That there were several other prisoners on B-Lower in 800 Unit, yelling up to the officers station requesting that the officers, Depue and Keck assist Mr. Baker.

3. That personally heard Officer Depue yell back at the prisoners seeking assistance for Mr Baker, "He isn't suppose to be using the stairs anyway, he's just mad because his wheelchair was took." Prisoner Counselor (PC) Michael J. Schafer then came out of his office and yelled, "He's faking, just let him fucking lay there."

4. That at no time did officers Depue, Keck or PC Schafer offer, render or attempt to render Mr. Baker any assistance, medical assistance or call for medical assistance. In fact, instead of responding to the prisoners calls to assist Mr. Baker, Officer Depue, sat at the officers station and went through a three (3) ring binder thumbing through what appeared to be prisoner special accommodations (based on my personal experience). At this time officer Depue, Keck, and PC Schafer were discussing what kind of misconduct they could write Mr. Baker.

I MARK ABRAITIS, do attest and swear the the above said information as true, accurate and reliable under the penalty of perjury, 28 U.S.C. 1746.

Dated: 08/28/2022

_Mark Abraitis_ #576077
Mark Abraitis, #576077
Affiant
Carson City Correctional Facility
10274 E. Boyer Road
Carson City, Michigan 48811-9746

                                    8-28-22
                                Witness          Date

                                      8-28-22
                                Witness          Date

STATE OF MICHIGAN )
                ) ss:  <u>AFFIDAVIT OF DONALD MARSHALL #130544</u>
COUNTY OF MONTCALM)

       I DONALD MARSHALL #130544, pursuant to 28 U S.C § 1746, declare under the penalty of perjury that the following is true and correct:

1. That on February 2, 2022, I was housed at the Carson City Correctional Facility, located at 10274 E. Boyer Road, Carson City, Michigan 48811-9746.

2. That on February 2, 2022 I was assigned as the 800 Unit's first shift laundry man.

3. That on February 2, 2022,  after delivering clean laundry to the cells on B-Wing-Lower in 800 Unit, I noticed prisoner Baker #274862 lying on the floor at the bottom of the stairs at around 08:15 or so. I walked up to him to see if he was OK and/or needed help.   At the same time a few other prisoners began yelling up to the officers station to get officer Depue, Keck and Edlinger's attention. Someone yelled back from the officers station: "He's just mad because his wheelchair was took, just let him lay there." I then heard someone yell from the officers station: "He's faking, just let him fucking lay there." I am not sure which officer yelled what, but I am sure it came from the officers station.

4. After realizing the officers were not coming to assist Mr. Baker, me and another prisoner I believe to be Mr. Echo's assisted Mr. Baker to his feet. Mr. Baker looked confused and disoriented. At that time Mr. Proctor came, and Mr. Proctor and I walked assisted Mr. Baker to his cell 8-118-B. Mr. Proctor helped Mr. Baker into his bed. I then returned to the 800 Unit laundry room, and continued doing my work.

5. That at no time Sgt. Fidler or any other MDOC staff member ever interview me during any grievance or other investigation in this above described matter.

       I DONALD MARSHALL #130544, pursuant to 28 U S C § 1746, declare under the penalty of perjury that the forgoing is true and and to the best of my information, belief and personal knowledge.

Dated: 9-2-22

*Donald Marshall #130544*
Donald Marshall #130544
Affiant
Carson City Correctional Facility
10274 E. Boyer Road
Carson City, Michigan 48811-9746

Witness        #130714   9/2/22
                                  Date

Witness                9/2/22
                                    Date