UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT BAKER,

        Plaintiff,                               Hon. Robert J. Jonker

v.                                              Case No. 1:24-cv-84

RANDEE REWERTS, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, a prisoner currently on parole with the Michigan Department of Corrections (MDOC), initiated this action under 42 U.S.C. § 1983 through counsel on March 25, 2024, against several individuals employed by the MDOC at the Carson City Correctional Facility (DRF), including Warden Randee Rewerts and Lt. Michael Schmidt. Plaintiff alleged that Defendants violated his Eighth Amendment rights though deliberate indifference to his serious medical needs and that Defendant Schmidt retaliated against him in violation of the First Amendment. (ECF No. 1 at PageID.8–11.)

Presently before me is the Motion to Dismiss (ECF No. 10) filed by Defendants Rewerts and Schmidt, which is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Defendants' motion be **GRANTED IN PART AND DENIED IN PART.**

### I. Background

Plaintiff's claims arise from a period of incarceration at DRF during 2022 and 2023. He alleges that he suffers from weakness in his back and, although he is capable of walking short distances, he requires a wheelchair to safely move around. (ECF No. 1 at PageID.3.) Plaintiff

alleges that his wheelchair was stored outside of his cell and was sometimes taken by staff for other prisoners' use. (*Id.*) Oftentimes the wheelchair would not be returned until Plaintiff brought it to the attention of unit staff that it was an issue. (*Id.*) Plaintiff alleges that he raised the issue with DRF staff, including Defendants Schafer, Depue, and Keck, on numerous occasions. (*Id.* at PageID.3–4.) He also alleges that he sent Defendant Warden Rewerts letters that explained the issue "of his wheelchair being taken and not returned," and asked that a spare wheelchair be available in each housing unit for emergency purposes so that his would not be taken. (*Id.* at PageID.4.) Plaintiff alleges that Defendant Rewerts "did nothing" to ensure that he had access to his wheelchair. (*Id.*)

On February 2, 2022, Plaintiff's wheelchair was not outside his cell, and he walked up the stairs to the officers' desk to alert staff that he needed his wheelchair. Defendants Depue and Keck told him that it was not their problem and directed him to return to his cell. On his way back down the stairs to his cell, Plaintiff fell forward onto his left shoulder. (*Id.*) Although other prisoners called for assistance for Plaintiff, Defendants Depue and Keck did nothing to assist him. Instead, they told other prisoners to just let him lie there because he was just mad that his wheelchair had been taken. Plaintiff alleges that Defendant Schafer arrived shortly thereafter and also instructed other prisoners to "[j]ust let him fucking lay there." (*Id.* at PageID.5.) Plaintiff alleges that other prisoners assisted him to his cell and then to the medline, where they attempted to contact the healthcare clinic. However, when a nurse called Plaintiff's housing unit to confirm the need for treatment, Defendant Depue insisted that Plaintiff had fabricated the entire incident. (*Id.*) It is unclear whether Plaintiff received medical care that day. Regardless, Plaintiff alleges that on March 7, 2022, his condition reached a critical point when he began to experience severe pain and could not feel or move his legs. Plaintiff's wheelchair assistant informed Defendant Depue of the

need for medical assistance, but Defendant Depue waited more than an hour before following up with Plaintiff. When Defendant Depue finally called healthcare, Plaintiff was taken to Sparrow Hospital. (*Id.* at PageID.6.)

Plaintiff "filed numerous grievances" in the weeks following his fall. (*Id.*) On January 20, 2023, Plaintiff was waiting in the day room of his housing unit for an interview unrelated to his fall or grievances. (*Id.* at PageID.7.) Plaintiff alleges that during his wait, Defendant Lt. Schmidt said that he heard Plaintiff "was making trouble for his officers by filing grievances." Lt. Schmidt then threatened to transfer Plaintiff to the 500 unit, a level 4 housing unit. Plaintiff alleges that, because he was classified as level 1 at the time, the transfer would have resulted in Plaintiff losing significant privileges and freedom that he had in level 1. (*Id.*) Plaintiff alleges that he understood Lt. Schmidt's comments to be a threat to stop filing grievances, which actually caused Plaintiff to stop filing grievances. (*Id.* at PageID.7–8.) However, Plaintiff does not allege that he was ever actually transferred to the level 4 unit.

## II.  Motion Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted). As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely

3

consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

### III. Discussion

#### A. Defendant Rewerts

Plaintiff alleges that Defendant Warden Rewerts violated his Eighth Amendment rights "by refusing to address [Plaintiff's] written concerns about his wheelchair being taken and not returned." (ECF No. 1 at PageID.9.) Defendant Rewerts contends that Plaintiff fails to allege an Eighth Amendment claim against him for two reasons. First, he asserts that Plaintiff fails to allege facts supporting both the objective and subjective components of his Eighth Amendment claim. Second, Rewerts contends that Plaintiff fails to allege any fact indicating that Rewerts was personally involved in a constitutional violation. (ECF No. 11 at PageID.67–68.) Plaintiff responds that he has pled sufficient facts to satisfy both components of his claim because: (1) deprivation of Plaintiff's medically-authorized wheelchair was sufficiently serious to implicate the objective component of the Eighth Amendment, and Rewerts was aware of the risk of harm through receipt of Plaintiff's letters; and (2) Defendant Rewerts failed to take reasonable measures to mitigate the risk of harm to Plaintiff by, for example, having a spare wheelchair placed in Plaintiff's housing

4

unit, instructing custody staff not to take Plaintiff's wheelchair, or instructing custody staff to return Plaintiff's wheelchair if they took it. (ECF No. 14 at PageID.84–85.)

Plaintiff's claim fails as to Defendant Rewerts because Plaintiff fails to allege that Rewerts engaged in active unconstitutional conduct required to impose liability on him. It is well established in the Sixth Circuit that to state a cognizable claim under Section 1983, a plaintiff must allege personal involvement by each of the named defendants. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). In other words, "liability under § 1983 . . . cannot be based upon a 'mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Here, Plaintiff fails to allege that Defendant Rewerts was personally involved in any manner in the deprivation of his wheelchair, as Plaintiff does not allege that Rewerts personally took it or instructed custody staff to do so. Rather, Rewerts's only alleged conduct is failing to respond to Plaintiff's written complaints about his wheelchair being taken and not returned. Courts have consistently dismissed similar claims based on a warden's failure to respond to a prisoner's letters or grievances concerning subordinates' alleged constitutional violations. *See Baker v. Michigan Dep't of Corrs.*, No. 1:13–cv–284, 2013 WL 2318900, at *6 (W.D. Mich. May 28, 2013) (dismissing the plaintiff's claims against the warden and deputy warden because the plaintiff's allegations that they failed to respond to his letters of complaint failed to establish that the defendants engaged in active unconstitutional behavior); *Johnson v. Corizon Corr. Healthcare*,

5

No. 1:12–cv–1368, 2013 WL 227751, at *5 (W.D. Mich. Jan. 22, 2013) (dismissing claims against warden and deputy warden because the plaintiff alleged nothing more than that they failed to respond to the plaintiff's letters of complaint); *Wiley v. Kentucky Dep't of Corrs.*, No. 11–97, 2012 WL 5878678, at *7 (E.D. Ky. Nov. 21, 2012) ("Wiley's allegation that he wrote letters and/or grievances to Warden Beckstrom complaining about Boyce's failure to provide him with a Quran fails to state a claim for relief because a warden's failure to respond to, or act upon, a grievance is insufficient to support a claim of supervisory liability under § 1983."); *Cooke v. Morgan*, No. 11-073, 2011 WL 5523267, at *3 (D. Del. Nov. 14, 2011) ("Plaintiff cannot maintain a constitutional claim merely because Warden Morgan did not respond to his letter."); *Alder v. Anderson*, No. 06-cv-12612, 2006 WL 1791338, at *3 (E.D. Mich. June 27, 2006) (concluding that the warden's alleged failure to respond to or investigate the plaintiff's grievances was insufficient to state a claim under Section 1983). Moreover, Plaintiff's claim fails to the extent it is based on supervisory liability. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Supervisory liability attaches only if the plaintiff shows that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [defendant]." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (internal quotation marks omitted). Because Plaintiff makes no such allegations, he fails to assert a valid supervisory liability claim.

### B.     Defendant Schmidt

Defendant Schmidt contends that Plaintiff fails to allege a valid retaliation claim against him. To establish his claim, Plaintiff must prove the following elements: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was

6

taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Defendant Schmidt challenges this claim only with regard to the adverse action element. To meet his burden on this element, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Id.* at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "capable of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Defendant Schmidt contends that the alleged adverse action—Schmidt's threat to transfer Plaintiff to a higher security unit that would have subjected Plaintiff to more restrictions—is not sufficiently adverse because Plaintiff does not allege that Schmidt actually ever increased his security classification or transferred him to a higher-level security unit.[1] This argument does not consider the Sixth Circuit's reported decision in *Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010), in which the court noted that "the threat of a transfer can be an adverse action if that transfer would result in foreseeable, negative consequences to the particular prisoner." *Id.* at 474. The court concluded that the threatened transfer at issue in that case, which was eventually recommended,

---

[1] Citing Plaintiff's grievance summary log from DRF, Schmidt also contends that his alleged threat to transfer Plaintiff could not have been adverse because Plaintiff continued to file grievances after Schmidt's alleged threat. (ECF No. 11 at PageID.69 (citing ECF No. 11-1.) Because Schmidt fails to explain why Plaintiff's grievance record, which is not referenced in the complaint, constitutes a document that may be considered in deciding a motion to dismiss, I decline to address this argument. *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). Likewise, I decline to consider Schmidt's argument—raised for the first time in his reply—that he lacked the authority to transfer Plaintiff. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (arguments made for the first time in reply brief are waived); *Hoch v. SunTrust Mtg., Inc.*, No. 1:18-cv-767, 2019 WL 1383712, at *2 (W.D. Mich. Jan. 18, 2019) ("SunTrust's argument regarding the exemption in M.C.L.A. § 445.1675(m)—raised for the first time in SunTrust's reply brief—is deemed waived."). This argument may be more appropriately raised in a motion for summary judgment.

7

to a lock-down unit was sufficiently adverse because "the transfer would foreseeably lead to a living environment with more restrictions and fewer privileges than in the prison's general population." *Id.* at 475; *see also Thaddeus-X*, 175 F.3d at 398–99 (noting that a threat to transfer a prisoner to a more restrictive living environment with fewer privileges, such as a segregation unit, could be sufficiently adverse); *Hudson v. Wade*, No. 5:09–cv–14109, 2011 WL 4506994, at *6 (E.D. Mich. Sept. 23, 2011), *report and recommendation adopted*, 2011 WL 4505828 (E.D. Mich. Sept. 29, 2011) ("A transfer or threat to transfer constitutes an adverse action only where the transfer will result in foreseeable negative consequences, such as more restrictive living conditions or impeding access to courts."). Here, Plaintiff sufficiently alleges adverse action for purposes of surviving Schmidt's Rule 12(b)(6) motion. That is, Plaintiff alleges that Schmidt threatened to transfer Plaintiff from his current level 1 custody classification to a more restrictive level 4 unit with less privileges than his level 1 placement.[2] (ECF No. 1 at PageID.7.)

### IV.   Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants' motion (ECF No. 10) as to the Eighth Amendment claim against Defendant Rewerts but **deny** it as to the retaliation claim against Defendant Schmidt.

Dated: June 12, 2024                              /s/ Sally J. Berens
                                                  SALLY J. BERENS
                                                  U.S. Magistrate Judge

---

[2] Because Plaintiff adequately pleads a retaliation claim and *Hill* clearly establishes the law as it pertains to the claim at this stage of the litigation, I find it unnecessary to address separately Schmidt's qualified immunity argument.

8

## **NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).